All right, here you hear you hear you. It's honorable appellate court in the second district is now over. Soon to adjourn. The Honorable Robert E. McLernan. Please be seated. First case of the afternoon. Oh, the state. I'll be happy. I'll be happy. J. Paul Miss Passion. You may proceed. Your honor is just as a preliminary matter. I hurt my knee, so I asked for permission to sit at this table. No problem to do my argument. Thank you. It completes the court. I'm here today to ask this court to consider whether Amanda Coots delivered the heroine that killed Mr Hawthorne when they had their party. I would like for your answer to be no. Um, could be somewhere in between. Like maybe she the jury wasn't properly instructed. Yes, that yes. Um, I I like the ruling in Swiderski United States v. Swiderski, which holds that joint possessors of heroin or a controlled substance can't deliver to each other. That appeals to my sense of logic. Why can't they give it to each other? Their joint possessors? I mean, it's like playing a game where you toss the ball back and forth. You're both possessing the ball, but you're also giving it to the other person. Well, yeah, but that's a ball. That's not a bit of heroin. We're not. We're not. What was the policy behind the Legislature's passage of the loss relative to what deliver means that I couldn't tell you. I don't know. Did they discuss the legislative intent in the Swiderski case? Isn't that how they reached the conclusion or one of the reasons? We should talk about preventing people from becoming part of the network of distribution of heroin. So basically, when you have two junkies who are sitting together and getting high, they aren't really part of the network of the distribution. It's not intended that the heroin is going to go any farther than them. They're not going to give it or sell it or anything to any third party. They've got it. They're going to use it, and that's all there is going to be, which is exactly what the facts are here. Can one have a possessive possessory interest in contraband? Legally? Well, sure. Well, if this is a contraband, I think someone said everybody's got to be somewhere. So there may be some issues about whether you can legally possess something. But if you actually possess something, does someone have the right to take it from you if it happens to be contraband? If it happens to be contraband, sure. So if you had a joint and I wanted it, I could demand it from you and you'd have to turn it over to me despite the fact that I'm not a police officer? If you by force took it from me, sure, I would give it up to you. No, I didn't say by force. I said, if you don't have a possessory interest in it, then why can't I just ask you for it and you give it to me? Oh, I agree with you. But I wouldn't be delivering it to you for purposes of the statute. I'd be delivering it to you, but I wouldn't be guilty of delivery of a controlled substance under the statute. Why not? I think that's the whole crux of your argument. Why doesn't this fit into a quote-unquote delivery? For the very reason that delivery is about dispensing controlled substances throughout the community to protect the community from the distribution of controlled substances. So now you're talking about the legislative intent or the intent behind the statute? To the extent that we know it, yes. However, you can tell that the, if for example, a drug dealer handed me a bag of heroin, under this theory, I would be guilty of delivery just by receiving heroin from anyone. How are you guilty of delivery by receiving? The same way Amanda Coots is guilty of delivery by receiving. She and her friend had heroin together? No, the question is delivery or giving. The Bowman case does talk about this legislative intent in the language of the, or at least went to the plain language of the statute and said that it could in fact apply, or actually reading between the lines, it could in fact apply to the last person in the chain of delivery. That would have, could be, might be a drug dealer, might be a friend, might be an acquaintance, whatever. It's not necessarily just targeting drug dealers. It could be targeting anyone who's the last person in the chain of delivery. And so to that end, cases that talk about Swiderski, not so much Bowman, actually Bowman was about constitutionality. So although it did discuss this issue, Bowman was about something else. But the cases that talk about the issue we're discussing today, they, it seems to have developed into a schemes, not a good word, but the courts have tended to look at the specific facts of each case and determine how active the possession is before someone can say that you have delivered it. When you're in a situation of mutual possession, mutual use, and it would appear that among the cases that both Mr. Hoffman and I have cited, not all of them, but it looks like a lot of them. And really just look to the facts of the cases and said, well, in this situation, we don't have to talk about Swiderski because we're looking at our own backs. And this person was way more active in his possession than his friend was. This person was not way more active in her possession than her friend was. And in that way, just determined whether the state had proved the elements of delivery beyond reasonable doubt. Well, you used the term active in possession, whereas when I read the cases, it seemed like many of them talk about how the drugs were acquired. And they really focus on how they were acquired, which makes some amount of sense because if I acquire the drugs by myself and then I give them to you, perhaps I've delivered them. Whereas if you acquire the drugs, you have them already. I can't deliver them to you if you've already acquired them. And they look to how they were acquired and what the interplay was between the two people in acquiring the drugs. Should we be looking at that here? Well, I would like it if you just adopted Swiderski wholeheartedly, but let's say you choose not to do that, then yes. And it seems to me that looking at the cases, if you haven't jointly acquired and possessed the controlled substance, then you're not joint possessors. What we have in this case with Amanda Kutz and Dustin Houghton is that they both acquired the heroin at the same time. The man who sold them the heroin came to their hotel room. They were both in the hotel room at the same time. They acquired the heroin together. They used it together. She called him, though, right? I beg your pardon? She was the one who called him. The dealer? Yes, she did. However, when the transaction was made and the delivery happened, when they acquired the heroin, they were both there. They were together. And that seems to be an important distinction made by some of these courts that talk about Swiderski. What about the facts of this case where she's got these in her pocket or in her hand, these drugs that, you know, presumably were found to lead to this person's death? And this person is saying, please give me the drug, begging her for the drugs. Why do you have to beg her for the drugs if she was, if he was in possession of the drugs? Well, that's one element of the picture, the entire picture that I think the court should be looking at. That's not all there is, is her holding the heroin in her pocket. First of all, we'll talk about her and doling it out. She, when they first injected their first dose of heroin, she got the heroin and he wanted to be the first one to use it. So, I mean, they didn't argue about that. She gave it to him. He got to be the first one to use it. She did not inject him. He injected himself. Another point that was important to at least one of the other courts in these other cases. She did argue with him about his second dose, but that was not because so much because she was controlling him as because she was worried about him. He had been in rehab and had not shot up heroin in a long time, and she was afraid that he would overdose. So she was trying to prevent that. So, yeah, she was afraid. She was arguing with him to a small extent. She was exerting some control, but from the picture as a whole, she was in no more control than he was. The part was his idea. He went to the bank to get the money to pay for everything they did. He paid for the taxi cab. He paid for the food they bought. He paid for the heroin. He paid for the hotel room. The only reason he didn't sign into the hotel room with his own name was because he wasn't carrying any identification that day, not because Kutz was controlling him in any way. So if you look at the whole entire picture, their activities as a whole are as equal as it's possible to be without having them hold bags each by one corner. So, yes, they jointly possess this heroin, even if you don't completely adopt Swiderski. Again, talking about the cases that follow after Swiderski, a lot of them examined Swiderski from a reasonable doubt point of view, where the issue of the case was a reasonable doubt. Also, a lot of them examined the cases that are about instructions. In this case, we also have an instruction problem, but it gets a little tricky. And the reason I don't claim that the trial court error in failing to give the instruction is because counsel didn't ask for it. Counsel didn't really pick up on the defense of joint possession until after the jury asked a question. Before that time, counsel's strategy was to argue, A, that the statute was unconstitutional in spite of Bohan, and B, that A.J. Lazar was the more culpable person, and he didn't even get that argument past the judge. The judge just sustained an objection and stopped that line of argument. But when the jury was there, defense counsel didn't talk about the fact of joint possession preventing a delivery, being in defense to the charge that included delivery. By the time he did, it was too late. The instructions that the jury got were a definition of the word knowingly. The jury had to find that Coutts knowingly delivered the heroin that killed Coffin, and a delivery can occur whether there's money involved or not. Those are the instructions that the jury did receive. The juries were not given a definition of the word deliver, even though there's a pattern IPI instruction, number 17.05A, A1, which defines deliver. The jury's question was, with respect to the definition of the term delivery, may the jury reasonably interpret the term to also mean give? And yet, the judge, the prosecutor, defense counsel, too, agreed that the best thing to do was tell the jury to go back to their incomplete instructions that didn't involve a definition of the word delivery. And also, counsel's error was not to follow up on that by requesting another pattern jury instruction, IPI criminal 4.162, which says that if two or more persons share the immediate and exclusive control or share the intention and the power to exercise control over something, then each person has possession. He then could have argued that their joint possession precluded a delivery for purposes of the statute. So that's why I'm saying that counsel was ineffective here, and I'm not laying the error on the judge. I don't think the judge was in a position to make a decision about what the defense should have been. That wasn't what her job was. One last thing, I would like to say that even if you don't find that counsel was ineffective to give the proper instructions, fundamental fairness does involve making sure that a jury is properly instructed. And because the evidence in this trial established joint possession, which was a defense to an element of the offense, they should have received the proper instruction just as a matter of fundamental fairness. Therefore, what we're asking is an outright reversal under Swiderski. But in the alternative, we're asking for reversal with a new trial. Thank you. Isn't possession of joint possession? Wouldn't that be a question of fact? Let's say the jury was properly instructed by your argument. The definition of delivery, which is to transfer possession and then join the definition of joint possession. You're asking us to make a factual determination that based on this evidence, there was joint possession. I disagree with that, Your Honor, because this jury wasn't given the option to decide whether deciding whether there was joint possession was an option for them. They didn't know about joint possession. I understand that that's your argument, but you're asking for an outright reversal. You're asking for us to decide there was joint possession. I would like to see a ruling that says anytime there's joint possession, you can't deliver. But again, okay, let's say we got that finding. Let's say we didn't, but was there joint possession here when these drugs were given from your client to the victim? Was there joint possession? Isn't that a question of fact that the jury, a properly instructed jury should determine, not this court sitting as an issue of law? No, because... Let me give you an example of what I think he's getting at. The scenario is, is that when the drugs are delivered, they're placed on the table, she takes three packets, he takes three packets, he leaves herself up with two packets, he then takes another packet. Did she ever deliver? How could she if she never took a packet and gave it to him? Under some of his case law, that would be a delivery. Wouldn't, I think you want us to make a factual determination as to whether or not there was joint possession. So that, that, as a trial effect. Are you asking us that based on the case law that we make, make law that says if two people buy the drugs together, then it's not a delivery. Isn't that, isn't, isn't each case fact specific about whether or not it's delivery? Yes, I do think you're right. So then it can't, we can't make the determination. That's a determination to be made by the trial effect, correct? Okay, I see what you're saying. So we can't make, we can only, the only determination we can make is that error was committed. Yes. And therefore, since Jeopardy has not attached, retrial is required. Well, that's, I agree that that's your decision and I would ask that, I, I, I believe very strongly that this jury wasn't properly instructed, that counsel didn't handle the and send it back for a new trial. Thank you. Thank you. You please. I am J. Helping from the state. Pleasure to represent the people of the state of Illinois before this honorable court. What's this jury properly instructed? I think they were properly instructed. As I read the defendant's brief, what they want is for an instruction saying that a person cannot deliver drugs to a person with joint possession of the drugs. Um, as I laid out in the first part of, in my first argument, I don't believe that that's the case. I believe, I believe Swidowski has been, uh, either distinguished or debunked by all the recent cases that have looked at it. And the other cases that are cited by the defendant, Edwards and have all been distinguished. I mean, Carillo. Yes, sir. If the instruction exists and it talks about joint possession and that's a defense, then doesn't it seem to negate the concept of delivery as between the two of them? Well, it's not a defense to, it's not an effect defense under the drug induced homicide act. Your Honor. And I would say this court in Bowen made that clear. This court in Bowen Bowen, excuse me, uh, without actually addressing this for their scheme, but said in a case where the defendant there was convicted of sexual assault and also of drug induced homicide and made in constitutional arguments and that the drug induced homicide statute was overbroad and void for vagueness. And his complaint on both of those levels was that it did not limit its application to those who were selling drugs. In other words, those in the commercial sale of drugs as the court in Swidowski based its opinion on this court said no. Exactly. This court said that the statute applies to anyone who normally delivers a controlled substance. And then it went on to define deliver as it's defined in the controlled substance act. 7 20 ILCS 5 0 7 1 0 2 H saying delivery is the actual constructive or attempted transfer of a controlled substance with or without consideration whether or not there is an agency relationship. I don't see how this defendant does not fall under that, uh, under that definition. Whether or not there's an agency relationship, it doesn't matter if she's going and getting it for this person. And here, as I've laid out, uh, and citing to a case that they use Edwards and distinguishing it, no, it's how can you reconcile what you just said without saying in the same breath that that instruction that Miss Passion read is invalid? How can they both be right? Well, the is what I'm saying. What I'm saying is in Bowen, this court said that under that, that delivery for purposes of, uh, the drug induced homicide statute means that any transfer at all and that's different than I'm sorry, even if even in the Edwards case, someone else injected the drugs into both of that's not what we have here in this case. Wasn't the whole idea about having a party victims idea? I mean, you don't want to call her and said, Hey, let's go to the super eight and have a party and get some heroin. Well, then I guess you would have to combine those two facts. The fact that you invited her certainly your honor and the fact that he went to the bank and $1,000. In fact, that he paid for the drugs. All I did was pay for it. And the fact that they were both using the drugs together. I mean, don't doesn't that? Isn't that a little different than some of the cases that that you cite? Um, for the proposition that this was not a joint or co co ownership of the drugs. Well, your honor, I can only quote you the language in many of those cases. Commonwealth v. Johnson in Massachusetts case says quite clear to purchase the substance, even with friends money intending to transfer it to them constitutes distribution. That was a case where they won, purchased it and then brought it to the other one. They were both together in this, weren't they? Well, they were both closer than perhaps in that case. But the victim would have gotten no drugs. It was the defendant who two times, both on Friday and Saturday night, called the dealer who negotiated with the dealer who took the drugs from the dealer. So if I gave somebody a phone number, I will be guilty of delivery. Is that what you're arguing? Or if I made the phone call and just said, show up and he'll make the payment. I'm I'm now delivering the drugs. No, I would set you down to again. This court's definition in Bowen talking about the transfer of a controlled substance and then looking at one of the U. S. A 1993 D. C. Circuit case, which explicates that transfer means to carry or take from one person or place to another. And also was it the second injection that killed him or the first one? Uh, I'm not sure. I think it's a combination of the two. It was an overdose, so I guess it was the second one on top of the first one. Well, then to be hyper technical. Uh, this was a redelivery, wasn't this? Not just the delivery. It was a redelivery because the kept the drugs kept going back and forth. Well, I'm not sure that the drugs everyone back and forth. Uh, she each time is I at least on Saturday. Well, when the victim died, he theoretically injected himself on two separate occasions. Yes, that's for in order to find her guilty. You have to find her guilty of at least one delivery. Now, under your argument, it would seem that both of those instances where she gave him the first or he took the first and she gave him a second or he delivered. It was a set. Unless, of course, you determined that you can make more than one delivery in the same drug transaction. Well, you can make more than you can give more than one bag. If you were the person a longer time, I would quibble definitionally. I wouldn't call it a redelivery. I would say if I threw you the ball and you threw it back to me, and I threw it to you again, that's a redelivery. I would say that if I give you a cigarette and you smoke it and I give you another cigarette, that's a second delivery. So what you're saying is delivery means anytime custody changes, regardless of the relationship between parties. Anytime you transfer, which means to carry your take from one person in place to another. Can I transfer something to you that you already possess? Yes, as in this case, even if you find and I wanted to get into the actual possession of constructive possession again, as I laid out in the brief, I don't believe that he ever had possession, either actual or constructive because that requires the ability, either immediate and exclusive dominion or control or the ability and intent and power to maintain immediately immediate and exclusive dominion. He never had that. She had the drugs and he asked her for them. The jury was never instructed on that. No, the jury was not instructed on that. No, my question is a very basic question that really, I think it cuts to the heart of this matter. And that is, if I possess something, can someone deliver it to me, even though I still possess it? If I, if I possess this piece of paper right now, can someone deliver it to me while it's in my possession? Not while it's in your actual possession and natural touching, but that's not the case here. The question is, if that's my letter, okay, I have that letter and I left it up here and later on you see me outside and you have it, it's mine. I essentially possess it under, you could argue I possess it under the constructive possession laws of this state, but you certainly deliver it to me when you bring it back to me. That seems somewhat inconsistent with the policy that seems to have been behind the creation of the statute, which is supposedly, it's supposed to be related to prosecuting people who are not at the end of the chain. And if that's your letter, it seems to me that you're at the end of the chain. And the fact that you give it to him and he gives it back to you, you're still the end of the chain and you were the end of the chain and he didn't give it to you, he regave it to you or he re-delivered it to you. What, where he's quote-unquote, you might say a tail on a tail. He's not in, he's not in the chain of distribution. He's off the chain. Well, but he has it. If you look at a genealogical chart, he doesn't come from up here. He comes from over here and comes back. Again, under what this court said in Bowen, I don't think that matters. This court said plainly, the statute applies to anyone who knowingly delivers a controlled substance. But look at, he delivered that paper. I'm sorry. That's all right. Look at the Wright case. And I think, I think the state cited the Wright case in their briefs and talked about the Wright case. And that's where, that's where I'm having a real major problem here. Is in the Wright case, the individual may have given the money, but the person who was buying the drugs went off separately, purchased the drugs and then came back. We don't have that here. We have him giving her the money and A.J. coming to the hotel room. And isn't there a little bit of conflict as to how long A.J. stayed? They both knew A.J. Isn't that a little different than what you're trying to say here with respect to, they're not being any constructive possession. In time, I answered you into a comment that Justice McClaren made before. I don't think, as again, this court said, when just talking about the last person in the chain, it's anyone. And in the Wright, if you, at page 10 of my brief, I quoted it and they specifically disagree with what Swiderski said. The court noted that Congress intended to prevent individuals from acquiring drugs for whatever purpose on behalf of others and then transferring the drugs to those others. While it may be factually that that person went out of sight or out of sound of hearing of the victim there, that's not much different than here because without the defendant, this victim does not have the drugs. And I think that's the intent behind this statute. Well, then maybe, maybe that might be an issue for the trier fact to determine if they have been properly instructed is what this individual have had the ability to get the drugs. But for this woman, I mean, with all due respect to the victim, it doesn't seem from what I've read of the record. He was cured of the driven snow either. So perhaps the intent of the legislature that you're reading was geared more towards some unsuspecting victim who some, you know, we've seen the cases and we've read the cases where they're younger people and some older person gets them the drugs. That doesn't seem like the facts that we have here. It seems like they were both really in this together, which is a real problem in reconciling it with the Swiderski case, um, with, with distinguishing it from the Swiderski case and some of the other cases. But again, that, and I agree that someone who tries to bring a young child in or someone they have control over by giving drugs to them is reached by this statute. But the plain language of this statute does not limit it to that. The statute simply says that a person commits drug-induced homicide when she violates section 401 of the Illinois Controlled Substances Act or 55 of the Methamphetamine Control and Community Protection Act by unlawfully delivering a controlled substance to another and any person's death is caused by the injection, inhalation, et cetera. It doesn't say when a parent or someone with control over the other What if the victim had threatened the defendant with bodily harm if she didn't turn over the bag? Would she have to be hit? Would she have to be severely injured before she relented possession in order to be guilty of delivery or would necessity or some other affirmative matter rise to the occasion and you would then back off from her statement that any delivery would not be punishable? I think you're right, your honor. I think some affirmative defenses would first of all, if the person simply went and took it from her, I don't think that would be a delivery but what if she just said, if you don't give it to me, I'll beat the crap out of you. She didn't transfer it. Because it's mine. I spent 600 bucks for that. Why don't you give it to me? That then would be a question of necessity. But that didn't happen here. And that goes back to my argument that he didn't even intend to exercise exclusive demunion or partial demunion over this. He always asked her for it. She said it was 10 to 15 minutes that he asked for the second bag. He never got up and said, give it to me, bitch. Or said, I'll hit you and stuff. He asked her over and over again. And it wasn't until she got tired of him hearing that, that she finally transferred it to him. So at least we've come to some sort of agreement that necessity might be an appropriate defense, but it's still your contention, however, that joint possession is not an affirmative matter that might result in an affirmative defense to the charge of delivery. No, and something just crossed my mind, Your Honor. Of course, necessity is never a defense to homicide because, at least intentional murder, because the theory is, may I continue? Necessity, of course, is premised on the fact that you could do a lesser crime to prevent a greater crime, but you can't reverse it. So if that applies to this, then necessity... Don't you have to have a reasonable basis to believe that what you're about to do would result in a strong probability of death before that rebuttal would kick in? You know, I don't know. I did not research the law on that. I just remember that it's true that necessity is not a defense, at least to first degree murder. I don't know about involuntary. Well, classically, that's where somebody has a gun up against somebody's head. And so you're talking about, you have an idea that the probabilities of somebody dying are pretty high, and I'm not convinced that there was any expert testimony or any evidence indicating that the probabilities of death were nigh or high. Yeah, and while hypothetical is an interesting intellectual exercise, it doesn't apply here. It's not here. Let me ask you a question. If I went out and I bought a bunch of heroin, I bought it, I possessed it, it was mine, you had nothing to do with it, and it's sitting on the table, and I put it into a syringe, and my hand's shaking so much, you say, yeah, I can't inject this. Would you inject this for me? And you inject it to me. Have you delivered drugs to me? Drugs that I clearly was in possession of, have you delivered those to me? To carry or take from one person or place to another. So it's taking the needle, is that a place to a place? That's six inches to 12 inches. Or is it a delivery? I would have to say, boy, that's a close call. I would guess not, but on the definitional, on the logical premise that I  think if you look at Long, their definition of this practical control is very, very telling. So this issue of control is in the forefront, this issue of control. Yes. And which leads us back to the definition of drug possession, which was never given in this case. Well, it was not given in this case, but my argument is that it doesn't matter because drug-induced homicide statute doesn't preclude delivery. They wanted an instruction that said you can't deliver to someone who has joint possession. My position is that's not the law under drug-induced homicide. I don't get that argument out of the briefs. The briefs say that a couple instructions should have been given and they weren't given and that resulted in ineffective assistance of counsel. And one of them was joint possession, which would have been preceded by the definition of delivery, which means to transfer possession. And then that would have freed up counsel to argue you can't transfer possession to someone who's already in possession. And then he could have argued or she could have argued to the jury that these two individuals were in joint possession. And again, on the facts and the law in Illinois that they were in joint possession. Forget about Swinburne School, forget about all that stuff. Get up in front of a jury in Illinois and argue the facts and the appropriate IPIs to say that these two individuals were in joint possession. Therefore, there was no transfer of possession. Therefore, there's been no delivery proven. Therefore, it's a not guilty finding because you have to find a delivery. With regard to, and I made two arguments. With regard to the argument that the facts show that there was no joint possession, I agree that that might be a valid concern. I would argue that it was, that it was not ineffective because there was no second qualm strictly. There was no prejudice because you couldn't find that he had joint position given the definition of possession, either actual or constructed, and the control she had over it and the control he never indicated over it to ask for dominion. But my second argument being that even if they jointly possessed, it doesn't mean she couldn't transfer. None of those instructions would matter. None of that would matter that they didn't get those instructions because that's not the law. You simply can transfer things that you both jointly possess for the purposes of this statute and for the purposes of, well, Wright had said for the purposes of the federal statute. They disagreed with it, and Iowa and Massachusetts and Maine and the DC circuit and the ninth circuit. And for the purposes of the delivery statute, Illinois is where you're saying we should rule that for the purposes of the delivery statute, forget about drug abuse, homicide, that you can deliver drugs to a person who's in joint possession. To the extent that this case, this court used the definition in 570, I guess that would be so, but you wouldn't have to. You can limit it to this, to this statute because of the important concerns behind this statute. Nevertheless, I would say, yes, it falls under that definition that this court used and the definition of transfer is set forth in law. If there are no other questions, your honor, the people would ask you to affirm the conviction sentence of Amanda Poots. Thank you. Mr. Asher. Your honors, it occurs to me that going back to these cases that have come out since Swiderski, in some of the cases, the defendant won. Some of the cases were about reasonable doubt. They, their convictions were overturned. Some of them, a finding was made that they should in fact have gotten instructions. The, the ultimate rulings on these cases weren't a bright line rule. In these cases, and I take exception to the state's representation of the long case and Commonwealth v. Johnson as rejecting Swiderski. I don't think they did that. In these cases, they looked at the facts and said, what do we have here? What's in front of us? And in, in Commonwealth v. Johnson, the court found that even if you purchase drugs with your friends, with your friend's money, there could be possession with intent because it puts Swiderski to apply. They didn't reject Swiderski. They didn't say Swiderski doesn't apply. They said it doesn't apply here because of our facts. Also in Wong, same thing. They didn't say Swiderski's bad luck. They said Swiderski doesn't apply to our facts. And one thing that all these different cases teaches us is the court looks to the facts before it and makes a determination about whether the possession was immediate and joint. I think that's the phrase. Joint acquisition and possession. I'm sorry. Do you agree that the facts, that the, the following facts are not in dispute and that is that immediately preceding this individual using heroin a second time and ultimately dying, your client actually had, had actual possession of the drugs, was, was for lack of a better term, coerced or begged into handing them over to this individual. Those facts are not in dispute, correct? Correct. I think the argument, at least one of the arguments, I should say, toward the end of counsel's argument was, where's the prejudice? The outcome wouldn't have been any different because clearly they were not at that point in time in joint possession of those drugs. Your client had actual possession, actual possession. The victim did not have constructive possession and your client handed the drugs over and that was the delivery that resulted in this death. Well, I disagree with that microscopic look at what it takes to decide whether there's joint possession. One needs to see what these people were doing, how they did it and what they intended when they did it. And her handing over that second package of heroin was part of a lot of other stuff that was going on. And all that other stuff is what demonstrates that they were in joint possession. If she was, if she was, if he was not in actual physical control, had he ever abandoned constructive possession or any possession of those drugs? I'm sorry, I didn't hear you. Had he ever abandoned any intent to possess those drugs in your opinion? No. No, he didn't. One thing I almost forgot to bring up. At the hearing on the post-trial motion, defense counsel started to argue the defense of joint possession and the state's attorney said he had his chance to do that and he could have done that, but he chose not to. Now the state is taking the possession that they couldn't, that couldn't have happened and he wouldn't have gotten his instruction. To that extent, I think the state's argument on the instruction issue is forfeited. So again, we ask either that your honors reverse this condition outright or remand it for a new trial. Any other questions? Thank you. We'll take the case under advisement. Court's adjourned.